UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

IN RE

JAMES R. GRUBE,

Debtor.

Chapter 7
Case No.  09-81713

A. CLAY COX, not individually but as Trustee
for the above bankruptcy estate,

Trustee-Plaintiff,

v.

Adv. No. 10-8055

SUZANNE H. GRUBE,

Defendant.

## SECOND AMENDED COMPLAINT

A. CLAY COX, Chapter 7 Trustee ("the Trustee"), on behalf of the estate of JAMES R. GRUBE, by Robert Lindstrom, his attorney, makes the following complaint against the Defendant, SUZANNE H. GRUBE, and states as follows:

## JURISDICTION, VENUE AND STANDING

1.      This Court has jurisdiction over this adversary proceeding pursuant to 28 USC §§157(a) and 1334, and 11 USC §§544(b)(1), 548, and 550.

2.      This action is a core proceeding pursuant to 28 USC §§157(b)(2)(H).

1

3.      Venue is proper in this district pursuant to 28 USC §§1408 and 1409(a).

4.      The Trustee has standing to bring these claims pursuant to Sections 544(b)(1), 548, and 550 of the United States Bankruptcy Code ("the Bankruptcy Code").

## NATURE OF THE ACTION

5.      This is an adversary proceeding that seeks to recover money JAMES R. GRUBE ("the Debtor") transferred to DRAGONFLY ENTERPRISES, INC. or JILL'S ON GALENA (collectively "Dragonfly") and DRAGONFLY RESTAURANT GROUP, LLC ("DRG").   While the checks evidencing the transfers were made payable to Dragonfly or DRG, the books and records of Dragonfly and DRG, and the federal income tax returns filed by them show the Defendant was the entity for whose the benefit the transfers were made.   The transfers are avoidable pursuant to the fraudulent transfer avoidance powers under the Bankruptcy Code and Illinois state law, and recoverable from the Defendant for the benefit of the estate pursuant to Bankruptcy Code Section 550(a)(1).

## THE PARTIES

6.      The Plaintiff is the Trustee and is pursuing this action on behalf of the Debtor's Chapter 7 estate.

7.      The Defendant, SUZANNE H. GRUBE, is the spouse of the Debtor, an insider of the Debtor, and the person who benefitted from the subject transfers.

## COUNT I: FRAUDULENT CONVEYANCE (Section 548)

8.      Dragonfly was incorporated in the State of Illinois on July 6, 2004.

9.      Dragonfly did business as Jill's on Galena.

10.     Dragonfly ceased doing business in December of 2008.

11.     Between June 2, 2007 and December 21, 2008 the Debtor wrote the following checks

totalling $205,000.00, copies of which are attached hereto and made a part hereof as Group Exhibit

A, all of which were drawn on his personal checking account and were made payable to Dragonfly:

| Date | Amount | Check # | Payee |
|------|--------|---------|-------|
| 06/14/07 | 15,000 | 1236 | Dragonfly |
| 07/13/07 | 8,000 | 1242 | Jill's |
| 07/25/07 | 7,000 | 1245 | Jill's |
| 08/09/07 | 15,000 | 1248 | Jill's |
| 08/22/07 | 22,000 | 1253 | Jill's |
| 09/06/07 | 13,000 | 1258 | Jill's |
| 09/27/07 | 10,000 | 1274 | Jill's |
| 10/11/07 | 10,000 | 1278 | Jill's |
| 11/15/07 | 5,000 | 1291 | Dragonfly |
| 11/28/07 | 20,000 | 1295 | Dragonfly |
| 09/30/08 | 10,000 | 1341 | Jill's |
| 10/14/08 | 10,000 | 1346 | Jill's |
| 11/12/08 | 10,000 | 1348 | Jill's |
| 11/18/08 | 30,000 | 1349 | Jill's |
| 12/21/08 | 20,000 | 1354 | Jill's |

3

12.     The Debtor has testified under oath that he made all of the transfers to Dragonfly described in paragraph 11 above and that the Defendant transferred no personal funds whatsoever to Dragonfly to either acquire an ownership interest or finance its operations as a lender.  A copy of the relevant testimony is attached hereto and made a part hereof as Exhibit B.

13.     The tax return filed by Dragonfly, a copy of which is attached hereto as Exhibit C and made a part hereof, shows that as of December 31, 2004,  JILL GRUBE ("Jill"), the daughter of the Debtor and the Defendant, owned 100% of the stock of Dragonfly.

14.     The tax return filed by Dragonfly, a copy of which is attached hereto as Exhibit D and made a part hereof, shows that as of December 31, 2005, the Defendant owned 73.44% of the stock of Dragonfly with Jill owning the remainder.

15.     The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibits E, F, and G and made a part hereof, show that as of December 31, 2006 and continuing through December 31, 2008, the Defendant owned 80% of the stock of Dragonfly with Jill owning the remainder.

16.     The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit H and made a part hereof, show that as of December 2009, the Defendant owned 100% of the stock of Dragonfly.

17.     On a personal financial statement dated October 1, 2008 signed by the Defendant on or about October 15, 2008, a copy of which is attached hereto as Exhibit I and made a part hereof, and submitted to Heartland Bank & Trust Company to obtain personal credit she valued her ownership interest in Dragonfly at $300,000.00.

4

18.    The tax returns filed by Dragonfly, a copy of which is attached hereto as Exhibit D and made a part hereof, show that as December 31, 2005 the Defendant was owed $629,405.00 by Dragonfly.

19.    The books and records and tax returns filed by Dragonfly, a copy of which is attached hereto as Group Exhibit E and made a part hereof, show that as December 31, 2006 the Defendant was owed $905,131.00 by Dragonfly.

20.    The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit F and made a part hereof, show that as December 31, 2007 the Defendant was owed $1,093,461.00 by Dragonfly.

21.    The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit G and made a part hereof, show that as December 31, 2008 the Defendant was owed $1,173,461.00 by Dragonfly.

22.    The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit H and made a part hereof, show that as December 31, 2009 the Defendant was owed $1,183,103.00 by Dragonfly.

23.    The books and records and tax returns filed by Dragonfly during the period from July 6, 2004 through December 31, 2009, copies of which are attached hereto as Group Exhibits C, D, E, F, G, and H and made a part hereof, show the Debtor had loaned no money to Dragonfly.

24.    The books and records and tax returns filed by Dragonfly during the period from July 6, 2004 through December 31, 2009, copies of which are attached hereto as Group Exhibits C, D, E, F, G, and H and made a part hereof, show the Debtor had no ownership interest in Dragonfly.

25.    The books and records and tax returns filed by Dragonfly during the period from July 6, 2004 through December 31, 2009, copies of which are attached hereto as Group Exhibits C, D, E, F, G, and H and made a part hereof, show the Debtor was not a creditor of Dragonfly.

26.    The Debtor's estate was depleted as he received no benefit from the transfers to Dragonfly described in paragraph 11 above.

27.    The Debtor received less than reasonably equivalent value in exchange for the transfers to Dragonfly described in paragraph 11 above.

28.    The Debtor was insolvent on the date that such transfers to Dragonfly were made, or became insolvent, as a result of such transfers to Dragonfly; or was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or intended to incur or believed he would incur debts that would be beyond his ability to pay as such debts matured.

29.    The Trustee may avoid the transfers to Dragonfly pursuant to Section 548(a)(1) of the Bankruptcy Code.

30.    As a result of making the transfers described in paragraph 11, the Debtor conferred a benefit on the Defendant as an insider, as the majority stockholder of Dragonfly, and as a creditor of Dragonfly.

31.    The Debtor intended to confer a benefit on the Defendant, an insider  by making the transfers described in paragraph 11 which were used by the Defendant to fund the operations of Dragonfly of which the Defendant was the majority owner and a primary lender.

32.    By making the transfers described in paragraph 11 the Debtor benefitted the Defendant as her ownership interest in Dragonfly increased.

6

33.     The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 11 is quantifiable as her ownership interest in Dragonfly increased from zero in 2004 to 100% in 2009.

34.     The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 11 is quantifiable as she valued her ownership interest in Dragonfly at $300,000.00 on a personal financial statement she executed dated October 15, 2008.

35.     The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 11 is quantifiable as she loaned Dragonfly $1,183,103.00 without using any of her personal funds thereby preserving her personal net worth.

36.     The Defendant further benefitted from the transfers made by the Debtor described in paragraph 11 in that as a result of the increase of her ownership interest in Dragonfly she received from Dragonfly a capital loss of $434,726.00 in 2008 which offset a capital gain realized by the Debtor in the amount of $926,879.00 on their personal federal income tax return, a copy of which is attached hereto as Exhibit J and made a part hereof..

37.     Pursuant to 11 USC §550(a)(1), the Trustee may recover the value of the transfers from the Defendant for the benefit of the estate.

RELIEF SOUGHT:

a.     Entry of an order avoiding the transfer of the Debtor's funds to DRAGONFLY ENTERPRISES, INC. in the amount of $205,000.00.

b.     Entry of an order granting judgment in favor of Plaintiff, A. CLAY COX, not individually, but as Trustee for the above bankruptcy estate and against Defendant, SUZANNE H. GRUBE, in the amount of $205,000.00, plus pre-judgment interest.

7

c.       Such other just and equitable relief.

## COUNT II: FRAUDULENT CONVEYANCE (Illinois Law)

38.     Dragonfly was incorporated in the State of Illinois on July 6, 2004.

39.     Dragonfly did business as Jill's on Galena.

40.     Dragonfly ceased doing business in December of 2008.

41.     Between June 9, 2005 and December 21, 2008 the Debtor wrote the following checks,

totalling $657,660.00, copies of which are attached hereto as Group Exhibit K, all of which were

drawn on his personal checking account and were made payable to Dragonfly:

| Date | Amount | Check # | Payee |
|---|---|---|---|
| 06/09/05 | 40,000 | 1052 | Jill's |
| 06/10/05 | 20,000 | 1053 | Jill's |
| 07/06/05 | 4,960 | 1059 | Jill's |
| 07/21/05 | 25,000 | 1063 | Dragonfly |
| 08/11/05 | 20,000 | 1069 | Dragonfly |
| 08/15/05 | 8,700 | 1070 | Dragonfly |
| 09/08/05 | 10,000 | 1079 | Dragonfly |
| 09/14/05 | 10,000 | 1081 | Dragonfly |
| 11/23/05 | 30,000 | 1110 | Jill's |
| 12/19/05 | 20,000 | 1117 | Jill's |
| 01/19/06 | 20,000 | 1121 | Dragonfly |
| 02/23/06 | 10,000 | 1127 | Dragonfly |
| 03/07/06 | 19,000 | 1126 | Jill's |

8

| | | | |
|---|---|---|---|
| 04/01/06 | 40,000 | 1134 | Dragonfly |
| 05/17/06 | 22,000 | 1138 | Dragonfly |
| 06/07/06 | 20,000 | 1142 | Dragonfly |
| 07/12/06 | 15,000 | 1147 | Dragonfly |
| 07/22/06 | 3,000 | 1149 | Dragonfly |
| 10/13/06 | 20,000 | 1164 | Dragonfly |
| 11/14/06 | 5,000 | 1176 | Dragonfly |
| 12/15/06 | 12,000 | 1181 | Dragonfly |
| 01/18/07 | 15,000 | 1199 | Dragonfly |
| 03/01/07 | 15,000 | 1207 | Dragonfly |
| 03/14/07 | 12,000 | 1211 | Dragonfly |
| 04/02/07 | 10,000 | 1217 | Dragonfly |
| 04/18/07 | 6,000 | 1219 | Dragonfly |
| 05/15/07 | 10,000 | 1224 | Dragonfly |
| 05/30/07 | 10,000 | 1226 | Dragonfly |
| 06/14/07 | 15,000 | 1236 | Dragonfly |
| 07/13/07 | 8,000 | 1242 | Jill's |
| 07/25/07 | 7,000 | 1245 | Jill's |
| 08/09/07 | 15,000 | 1248 | Jill's |
| 08/22/07 | 22,000 | 1253 | Jill's |
| 09/06/07 | 13,000 | 1258 | Jill's |
| 09/27/07 | 10,000 | 1274 | Jill's |
| 10/11/07 | 10,000 | 1278 | Jill's |
| 11/15/07 | 5,000 | 1291 | Dragonfly |
| 11/28/07 | 20,000 | 1295 | Dragonfly |
| 09/30/08 | 10,000 | 1341 | Jill's |

| 10/14/08 | 10,000 | 1346 | Jill's |
|---|---|---|---|
| 11/12/08 | 10,000 | 1348 | Jill's |
| 11/18/08 | 30,000 | 1349 | Jill's |
| 12/21/08 | 20,000 | 1354 | Jill's |

42.     The Debtor has testified under oath that he made all of the transfers to Dragonfly described in paragraph 41 above and that the Defendant transferred no personal funds whatsoever to Dragonfly to either acquire an ownership interest or finance its operations as a lender.    A copy of the relevant testimony is attached hereto and made a part hereof as Exhibit B.

43.     The tax return filed by Dragonfly, a copy of which is attached hereto as Exhibit C and made a part hereof, shows that as of December 31, 2004,  JILL GRUBE ("Jill"), the daughter of the Debtor and the Defendant, owned 100% of the stock of Dragonfly.

44.     The tax return filed by Dragonfly, a copy of which is attached hereto as Exhibit D and made a part hereof, shows that as of December 31, 2005, the Defendant owned 73.44% of the stock of Dragonfly with Jill owning the remainder.

45.     The books and records and tax return filed by Dragonfly, copies of which are attached hereto as Group Exhibits E, F, and G and made a part hereof, shows that as of December 31, 2006 and continuing through December 31, 2008, the Defendant owned 80% of the stock of Dragonfly with Jill owning the remainder.

46.     The books and records and tax return filed by Dragonfly, copies of which are attached hereto as Group Exhibit H and made a part hereof, show that as of December 2009, the Defendant owned 100% of the stock of Dragonfly.

10

47.     On a personal financial statement dated October 1, 2008 signed by the Defendant on or about October 15, 2008, a copy of which is attached hereto as Exhibit I and made a part hereof, and submitted to Heartland Bank & Trust Company to obtain credit she valued her ownership interest in Dragonfly at $300,000.00.

48.     The tax return filed by Dragonfly, a copy of which is attached hereto as Exhibit D and made a part hereof, shows that as December 31, 2005 the Defendant was owed $629,405.00 by Dragonfly.

49.     The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit E and made a part hereof, show that as December 31, 2006 the Defendant was owed $905,131.00 by Dragonfly.

50.     The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit F and made a part hereof, show that as December 31, 2007 the Defendant was owed $1,093,461.00 by Dragonfly.

51.     The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit G and made a part hereof, show that as December 31, 2008 the Defendant was owed $1,173,461.00 by Dragonfly.

52.     The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit H and made a part hereof, show that as of December 31, 2009 the Defendant was owed $1,183,103.00 by Dragonfly.

53.     The books and records and tax returns filed by Dragonfly during the period from July 6, 2004 through December 31, 2009, copies of which are attached hereto as Group Exhibits C, D, E, F, G, and H and made a part hereof, show the Debtor had loaned no money to Dragonfly.

11

54.     The books and records and tax returns filed by Dragonfly during the period from July 6, 2004 through December 31, 2009, copies of which are attached hereto as Group Exhibits C, D, E, F, G, and H and made a part hereof, show the Debtor had no ownership interest in Dragonfly.

55.     The books and records and tax returns filed by Dragonfly during the period from July 6, 2004 through December 31, 2009, copies of which are attached hereto as Group Exhibits C, D, E, F, G, and H and made a part hereof, show the Debtor was not a creditor of Dragonfly.

56.     The Debtor's estate was depleted as he received no benefit from the transfers to Dragonfly described in paragraph 41 above.

57.     The Debtor received less than reasonably equivalent value in exchange for the transfers to Dragonfly described in paragraph 41 above.

58.     At the time of the transfers to Dragonfly, the Debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

59.     As of the date of the transfers by the Debtor to Dragonfly, numerous creditors held unsecured claims against the Debtor's estate which were allowable under Section 502 of the Bankruptcy Code.

60.     The Trustee may avoid the transfers pursuant to Section 544(b)(1) of the Bankruptcy Code and 740 ILCS 160/5(a)(2).

61.     As a result of making the transfers described in paragraph 41, the Debtor conferred a benefit on the Defendant as an insider, as the majority stockholder of Dragonfly, and as a creditor of Dragonfly.

12

62.     The Debtor intended to confer a benefit on the Defendant, an insider by making the transfers described in paragraph 41 which were used by the Defendant to fund the operations of Dragonfly of which the Defendant was the majority owner and a primary lender.

63.     By making the transfers described in paragraph 41 the Debtor benefitted the Defendant as her ownership interest in Dragonfly increased.

64.     The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 41 is quantifiable as her ownership interest in Dragonfly increased from zero in 2004 to 100% in 2009.

65.     The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 41 is quantifiable as she valued her ownership interest in Dragonfly at $300,000.00 on a personal financial statement she executed dated October 15, 2008.

66.     The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 41 is quantifiable as she loaned Dragonfly $1,183,103.00 without using any of her personal funds thereby preserving her personal net worth.

67.     The Defendant further benefitted from the transfers made by the Debtor described in paragraph 41 in that as a result of the increase of her ownership interest in Dragonfly she received from Dragonfly a capital loss of $434,726.00 in 2008 which offset a capital gain realized by the Debtor in the amount of $926,879.00 on their personal federal income tax return, a copy of which is attached hereto as Exhibit J and made a part hereof.

68.     Pursuant to 11 USC §550(a)(1), the Trustee may recover the value of the transfers from the Defendant for the benefit of the estate.

RELIEF SOUGHT:

a.      Entry of an order avoiding the transfer of the Debtor's funds to DRAGONFLY

ENTERPRISES, INC. in the amount of $657,660.00.

b.      Entry of an order granting judgment in favor of Plaintiff, A. CLAY COX, not

individually, but as Trustee for the above bankruptcy estate and against Defendant, SUZANNE H.

GRUBE, in the amount of $657,660.00, plus pre-judgment interest.

c.      Such other just and equitable relief.


## COUNT III: FRAUDULENT CONVEYANCE (Illinois Law)

69.      Dragonfly was incorporated in the State of Illinois on July 6, 2004.

70.      Dragonfly did business as Jill's on Galena.

71.      Dragonfly ceased doing business in December of 2008.

72.      Between June 9, 2005 and December 21, 2008 the Debtor wrote the following checks

totalling $657,660.00, copies of which are attached hereto as Group Exhibit K , all of which were

drawn on his personal checking account and were made payable to Dragonfly:


| Date | Amount | Check # | Payee |
|---|---|---|---|
| 06/09/05 | 40,000 | 1052 | Jill's |
| 06/10/05 | 20,000 | 1053 | Jill's |
| 07/06/05 | 4,960 | 1059 | Jill's |
| 07/21/05 | 25,000 | 1063 | Dragonfly |
| 08/11/05 | 20,000 | 1069 | Dragonfly |

14

| | | | |
|---|---|---|---|
| 08/15/05 | 8,700 | 1070 | Dragonfly |
| 09/08/05 | 10,000 | 1079 | Dragonfly |
| 09/14/05 | 10,000 | 1081 | Dragonfly |
| 11/23/05 | 30,000 | 1110 | Jill's |
| 12/19/05 | 20,000 | 1117 | Jill's |
| 01/19/06 | 20,000 | 1121 | Dragonfly |
| 02/23/06 | 10,000 | 1127 | Dragonfly |
| 03/07/06 | 19,000 | 1126 | Jill's |
| 04/01/06 | 40,000 | 1134 | Dragonfly |
| 05/17/06 | 22,000 | 1138 | Dragonfly |
| 06/07/06 | 20,000 | 1142 | Dragonfly |
| 07/12/06 | 15,000 | 1147 | Dragonfly |
| 07/22/06 | 3,000 | 1149 | Dragonfly |
| 10/13/06 | 20,000 | 1164 | Dragonfly |
| 11/14/06 | 5,000 | 1176 | Dragonfly |
| 12/15/06 | 12,000 | 1181 | Dragonfly |
| 01/18/07 | 15,000 | 1199 | Dragonfly |
| 03/01/07 | 15,000 | 1207 | Dragonfly |
| 03/14/07 | 12,000 | 1211 | Dragonfly |
| 04/02/07 | 10,000 | 1217 | Dragonfly |
| 04/18/07 | 6,000 | 1219 | Dragonfly |
| 05/15/07 | 10,000 | 1224 | Dragonfly |
| 05/30/07 | 10,000 | 1226 | Dragonfly |
| 06/14/07 | 15,000 | 1236 | Dragonfly |
| 07/13/07 | 8,000 | 1242 | Jill's |
| 07/25/07 | 7,000 | 1245 | Jill's |

| 08/09/07 | 15,000 | 1248 | Jill's |
|---|---|---|---|
| 08/22/07 | 22,000 | 1253 | Jill's |
| 09/06/07 | 13,000 | 1258 | Jill's |
| 09/27/07 | 10,000 | 1274 | Jill's |
| 10/11/07 | 10,000 | 1278 | Jill's |
| 11/15/07 | 5,000 | 1291 | Dragonfly |
| 11/28/07 | 20,000 | 1295 | Dragonfly |
| 09/30/08 | 10,000 | 1341 | Jill's |
| 10/14/08 | 10,000 | 1346 | Jill's |
| 11/12/08 | 10,000 | 1348 | Jill's |
| 11/18/08 | 30,000 | 1349 | Jill's |
| 12/21/08 | 20,000 | 1354 | Jill's |

73.     The Debtor has testified under oath that he made all of the transfers to Dragonfly described in paragraph 72 above and that the Defendant transferred no personal funds whatsoever to Dragonfly to either acquire an ownership interest or finance its operations as a lender.   A copy of the relevant testimony is attached hereto and made a part hereof as Exhibit B.

74.     The tax return filed by Dragonfly, a copy of which is attached hereto as Exhibit C and made a part hereof, shows that as of December 31, 2004,  JILL GRUBE ("Jill"), the daughter of the Debtor and the Defendant, owned 100% of the stock of Dragonfly.

75.     The tax return filed by Dragonfly, a copy of which is attached hereto as Exhibit D and made a part hereof, shows that as of December 31, 2005, the Defendant owned 73.44% of the stock of Dragonfly with Jill owning the remainder.

16

76.     The books and records and tax return filed by Dragonfly, copies of which are attached hereto as Group Exhibits E, F, and G and made a part hereof, shows that as of December 31, 2006 and continuing through December 31, 2008, the Defendant owned 80% of the stock of Dragonfly with Jill owning the remainder.

77.     The books and records and tax return filed by Dragonfly, copies of which are attached hereto as Group Exhibit H and made a part hereof, show that as of December 2009, the Defendant owned 100% of the stock of Dragonfly.

78.     On a personal financial statement dated October 1, 2008 signed by the Defendant on or about October 15, 2008, a copy of which is attached hereto as Exhibit I and made a part hereof, and submitted to Heartland Bank & Trust Company to obtain credit she valued her ownership interest in Dragonfly at $300,000.00.

79.     The tax return filed by Dragonfly, a copy of which is attached hereto as Exhibit D and made a part hereof, shows that as December 31, 2005 the Defendant was owed $629,405.00 by Dragonfly.

80.     The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit E and made a part hereof, show that as December 31, 2006 the Defendant was owed $905,131.00 by Dragonfly.

81.     The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit F and made a part hereof, show that as December 31, 2007 the Defendant was owed $1,093,461.00 by Dragonfly.

82.      The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit G and made a part hereof, show that as December 31, 2008 the Defendant was owed $1,173,461.00 by Dragonfly.

83.      The books and records and tax returns filed by Dragonfly, copies of which are attached hereto as Group Exhibit H and made a part hereof, show that as of December 31, 2009 the Defendant was owed $1,183,103.00 by Dragonfly.

84.      The books and records and tax returns filed by Dragonfly during the period from July 6, 2004 through December 31, 2009, copies of which are attached hereto as Group Exhibits C, D, E, F, G, and H and made a part hereof, show the Debtor had loaned no money to Dragonfly.

85.      The books and records and tax returns filed by Dragonfly during the period from July 6, 2004 through December 31, 2009, copies of which are attached hereto as Group Exhibits C, D, E, F, G, and H and made a part hereof, show the Debtor had no ownership interest in Dragonfly.

86.      The books and records and tax returns filed by Dragonfly during the period from July 6, 2004 through December 31, 2009, copies of which are attached hereto as Group Exhibits C, D, E, F, G, and H and made a part hereof, show the Debtor was not a creditor of Dragonfly.

87.      The Debtor's estate was depleted as he received no benefit from the transfers to Dragonfly described in paragraph 72 above.

88.      The Debtor made the transfers to Dragonfly with actual intent to hinder, delay, or defraud any creditor of the Debtor as:

        a.      The transfers were made to an insider;

        b.      The Debtor retained possession or control of the property transferred after the transfers;

18

c.      The transfers were concealed and not disclosed by the Debtor;

d.      The transfers were of substantially all of the Debtor's assets;

e.      The Debtor removed or concealed assets;

f.      The Debtor received less than reasonably equivalent value for the transfers made to Dragonfly for the benefit of the Defendant;

g.      The Debtor was insolvent or became insolvent shortly after the transfers were made; and

h.      The transfers occurred shortly before and after a substantial debt was incurred.

89.     The Plaintiff may avoid the transfers to Dragonfly pursuant to Section 544(b)(1) of the Bankruptcy Code and 740 ILCS 160/5(a)(1).

90.     As a result of making the transfers described in paragraph 72, the Debtor conferred a benefit on the Defendant as an insider, as the majority stockholder of Dragonfly, and as a creditor of Dragonfly.

91.     The Debtor intended to confer a benefit on the Defendant, an insider by making the transfers described in paragraph 72 which were used by the Defendant to fund the operations of Dragonfly of which the Defendant was the majority owner and a primary lender.

92.     By making the transfers described in paragraph 72 the Debtor benefitted the Defendant as her ownership interest in Dragonfly increased.

93.     The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 72 is quantifiable as her ownership interest in Dragonfly increased from zero in 2004 to 100% in 2009.

94.     The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 72 is quantifiable as she valued her ownership interest in Dragonfly at $300,000.00 on a personal financial statement she executed dated October 15, 2008.

95.     The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 72 is quantifiable as she loaned Dragonfly $1,183,103.00 without using any of her personal funds thereby preserving her personal net worth.

96.     The Defendant further benefitted from the transfers made by the Debtor described in paragraph 72 in that as a result of the increase of her ownership interest in Dragonfly she received from Dragonfly a capital loss of $434,726.00 in 2008 which offset a capital gain realized by the Debtor in the amount of $926,879.00 on their personal federal income tax return, a copy of which is attached hereto as Exhibit J and made a part hereof.

97.     Pursuant to 11 USC §550(a)(1), the Trustee may recover the value of the transfers from the Defendant for the benefit of the estate.

RELIEF SOUGHT:

a.      Entry of an order avoiding the transfer of the Debtor's funds to DRAGONFLY ENTERPRISES, INC. in the amount of $657,660.00.

b.      Entry of an order granting judgment in favor of Plaintiff, A. CLAY COX, not individually, but as Trustee for the above bankruptcy estate and against Defendant, SUZANNE H. GRUBE, in the amount of $657,660.00, plus pre-judgment interest.

c.      Such other just and equitable relief.

20

## COUNT IV: FRAUDULENT CONVEYANCE (Section 548)

98.     DRG was formed in the State of Illinois on January 19, 2007.

99.     DRG ceased doing business in December of 2008.

100.    Between June 2, 2007 and December 31, 2008 the Debtor wrote the following checks,

totalling $258,500.00, copies of which are attached hereto as Group Exhibit L, all of which were

drawn on his personal checking account and were made payable to DRG:

| Date | Amount | Check # | Payee |
|---|---|---|---|
| 06/04/07 | 27,000 | 1228 | DRG |
| 06/27/07 | 55,000 | 1240 | DRG |
| 08/09/07 | 5,000 | 1247 | DRG |
| 08/27/07 | 7,500 | 1255 | DRG |
| 09/20/07 | 20,000 | 1263 | DRG |
| 09/27/07 | 5,000 | 1273 | DRG |
| 10/24/07 | 15,000 | 1283 | DRG |
| 11/08/07 | 10,000 | 1290 | DRG |
| 01/10/08 | 30,000 | 1301 | DRG |
| 03/07/08 | 20,000 | 1304 | DRG |
| 03/19/08 | 6,000 | 1306 | DRG |
| 04/02/08 | 10,000 | 1308 | DRG |
| 04/17/08 | 8,000 | 1310 | DRG |
| 04/28/08 | 25,000 | 1313 | DRG |
| 06/10/08 | 15,000 | 1329 | DRG |

101.    The Debtor has testified under oath that he made all of the transfers to DRG described in paragraph 100 above and that the Defendant transferred no personal funds whatsoever to DRG to either acquire an ownership interest or finance its operations as a lender.    A copy of the relevant testimony is attached hereto and made a part hereof as Exhibit B.

102.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit M and made a part hereof, show that as of December 31, 2007,  JILL GRUBE ("Jill"), the daughter of the Debtor and the Defendant, owned 75% of DRG, and the Defendant owned 25% of DRG.

103.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit N and made a part hereof, show that as of December 31, 2008, the Defendant owned 100% of DRG.

104.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit M and made a part hereof, show that as December 31, 2007 the Defendant was owed $259,738.00 by DRG.

105.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit N and made a part hereof, show that as December 31, 2008 the loan of $259,738.00 made by the Defendant had been converted to a capital contribution and added to other transfers from the Debtor, all of which totalled $864,142.00.

106.    The books and records and tax returns filed by DRG during the period from January 19, 2007 through December 31, 2008, copies of which are attached hereto as Group Exhibits M and N and made a part hereof, show the Debtor had loaned no money to DRG.

107.    The books and records and tax returns filed by DRG during the period from January 19, 2007 through December 31, 2008, copies of which are attached hereto as Group Exhibits M and N and made a part hereof, show the Debtor had no ownership interest in DRG.

108.    The books and records and tax returns filed by DRG during the period from January 19, 2007 through December 31, 2008, copies of which are attached hereto as Group Exhibits M and N and made a part hereof, show the Debtor was not a creditor of DRG.

109.    The Debtor's estate was depleted as he received no benefit from the transfers to DRG described in paragraph 100 above.

110.    The Debtor received less than reasonably equivalent value in exchange for the transfers described in paragraph 100 above.

111.    The Debtor was insolvent on the date that such transfers were made, or became insolvent, as a result of such transfers; or was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; or intended to incur or believed he would incur debts that would be beyond his ability to pay as such debts matured.

112.    The Trustee may avoid the transfers to DRG pursuant to Section 548(a)(1) of the Bankruptcy Code.

113.    As a result of making the transfers described in paragraph 100, the Debtor conferred a benefit on the Defendant as an insider, as the majority owner of DRG, and as a creditor of DRG.

114.    The Debtor intended to confer a benefit on the Defendant, an insider  by making the transfers described in paragraph 100 which were used by the Defendant to fund the operations of DRG of which the Defendant was the majority owner and a primary lender.

115.    By making the transfers described in paragraph 100 the Debtor benefitted the Defendant as her ownership interest in DRG increased.

116.    The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 100 is quantifiable as her ownership interest in DRG increased from 25% in 2007 to 100% in 2008.

117.    The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 100 is quantifiable as she invested $864,142.00 in DRG without using any of her personal funds thereby preserving her personal net worth.

118.    The Defendant further benefitted from the transfers made by the Debtor described in paragraph 100 in that as a result of the increase of her ownership interest in DRG she received from DRG a capital loss of $240,678.00 in 2008 which offset a capital gain realized by the Debtor in the amount of $926,879.00 on their personal federal income tax return, a copy of which is attached hereto as Exhibit J and made a part hereof.

119.    Pursuant to 11 USC §550(a)(1), the Trustee may recover the value of the transfers from the Defendant for the benefit of the estate.

RELIEF SOUGHT:

a.    Entry of an order avoiding the transfer of the Debtor's funds to DRAGONFLY RESTAURANT GROUP, LLC in the amount of $258,500.00.

b.    Entry of an order granting judgment in favor of Plaintiff, A. CLAY COX, not individually, but as Trustee for the above bankruptcy estate and against Defendant, SUZANNE H. GRUBE, in the amount of $258,500.00, plus pre-judgment interest.

c.    Such other just and equitable relief.

24

## COUNT V: FRAUDULENT CONVEYANCE (Illinois Law)

120.    DRG was formed in the State of Illinois on January 19, 2007.

121.    DRG ceased doing business in December of 2008.

122.    Between January 19, 2007 and December 31, 2008 the Debtor wrote the following

checks, totalling $583,500.00, copies of which are attached hereto as Group Exhibit O, all of which

were drawn on his personal checking account and were made payable to DRG:

| Date | Amount | Check # | Payee |
|------|--------|---------|-------|
| 02/26/07 | 5,000 | 1197 | DRG |
| 03/23/07 | 30,000 | 1213 | DRG |
| 04/02/07 | 40,000 | 1216 | DRG |
| 04/23/07 | 100,000 | 1220 | DRG |
| 05/08/07 | 125,000 | 1222 | DRG |
| 05/26/07 | 25,000 | 1225 | DRG |
| 06/04/07 | 27,000 | 1228 | DRG |
| 06/27/07 | 55,000 | 1240 | DRG |
| 08/09/07 | 5,000 | 1247 | DRG |
| 08/27/07 | 7,500 | 1255 | DRG |
| 09/20/07 | 20,000 | 1263 | DRG |
| 09/27/07 | 5,000 | 1273 | DRG |
| 10/24/07 | 15,000 | 1283 | DRG |
| 11/08/07 | 10,000 | 1290 | DRG |
| 01/10/08 | 30,000 | 1301 | DRG |

25

| 03/07/08 | 20,000 | 1304 | DRG |
|---|---|---|---|
| 03/19/08 | 6,000 | 1306 | DRG |
| 04/02/08 | 10,000 | 1308 | DRG |
| 04/17/08 | 8,000 | 1310 | DRG |
| 04/28/08 | 25,000 | 1313 | DRG |
| 06/10/08 | 15,000 | 1329 | DRG |

123.    The Debtor has testified under oath that he made all of the transfers to DRG described in paragraph 122 above and that the Defendant transferred no personal funds whatsoever to DRG to either acquire an ownership interest or finance its operations as a lender.   A copy of the relevant testimony is attached hereto and made a part hereof as Exhibit B.

124.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit M and made a part hereof, show that as of December 31, 2007,  JILL GRUBE ("Jill"), the daughter of the Debtor and the Defendant, owned 75% of DRG, and the Defendant owned 25% of DRG.

125.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit N and made a part hereof, show that as of December 31, 2008, the Defendant owned 100% of DRG.

126.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit M and made a part hereof, show that as December 31, 2007 the Defendant was owed $259,738.00 by DRG.

127.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit N and made a part hereof, show that as December 31, 2008 the loan of

$259,73.00 made by the Defendant had been converted to a capital contribution and added to other transfers from the Debtor, all of which totalled $864,142.00.

128.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibits M and N and made a part hereof, show that during the period from January 19, 2007 through December 31, 2008 show the Debtor had loaned no money to DRG.

129.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibits M and N and made a part hereof, show that during the period from January 19, 2007 through December 31, 2008 show the Debtor had no ownership interest in DRG.

130.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibits M and N and made a part hereof, show that during the period from January 19, 2007 through December 31, 2008 show the Debtor was not a creditor of DRG.

131.    The Debtor's estate was depleted as he received no benefit from the transfers to DRG described in paragraph 122 above.

132.    The Debtor received less than reasonably equivalent value in exchange for the transfers to DRG described in paragraph 122 above.

133.    At the time of the transfers to DRG, the Debtor was engaged or was about to engage in a business or transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction; or intended to incur, or believed or reasonably should have believed that he would incur debts beyond his ability to pay as they became due.

134.    As of the date of the transfers by the Debtor to DRG, numerous creditors held unsecured claims against the Debtor's estate which were allowable under Section 502 of the Bankruptcy Code.

27

135.    The Trustee may avoid the transfers pursuant to Section 544(b)(1) of the Bankruptcy Code and 740 ILCS 160/5(a)(2).

136.    As a result of making the transfers described in paragraph 122, the Debtor conferred a benefit on the Defendant as an insider, as the majority owner of DRG, and as a creditor of DRG.

137.    The Debtor intended to confer a benefit on the Defendant, an insider by making the transfers described in paragraph 122 which were used by the Defendant to fund the operations of DRG of which the Defendant was the majority owner and a primary lender.

138.    By making the transfers described in paragraph 122 the Debtor benefitted the Defendant as her ownership interest in DRG increased.

139.    The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 122 is quantifiable as her ownership interest in DRG increased from 25% in 2007 to 100% in 2008.

140.    The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 122 is quantifiable as she invested $864,142.00 in DRG without using any of her personal funds thereby preserving her personal net worth.

141.    The Defendant further benefitted from the transfers made by the Debtor described in paragraph 122 in that as a result of the increase of her ownership interest in DRG she received from DRG a capital loss of $240,678.00 in 2008 which offset a capital gain realized by the Debtor in the amount of $926,879.00 on their personal federal income tax return, a copy of which is attached hereto as Exhibit J and made a part hereof.

142.    Pursuant to 11 USC §550(a)(1), the Trustee may recover the value of the transfers from the Defendant for the benefit of the estate.

28

RELIEF SOUGHT:

a.     Entry of an order avoiding the transfer of the Debtor's funds to DRAGONFLY

RESTAURANT GROUP, LLC in the amount of $583,500.00.

b.     Entry of an order granting judgment in favor of Plaintiff, A. CLAY COX, not

individually, but as Trustee for the above bankruptcy estate and against Defendant, SUZANNE H.

GRUBE, in the amount of $583,500.00, plus pre-judgment interest.

c.     Such other just and equitable relief.


## COUNT VI: FRAUDULENT CONVEYANCE (Illinois Law)

143.   DRG was formed in the State of Illinois on January 19, 2007.

144.   DRG ceased doing business in December of 2008.

145.   Between January 19, 2007 and December 31, 2008 the Debtor wrote the following

checks, totalling $583,500.00, copies of which are attached hereto as Group Exhibit O, all of which

were drawn on his personal checking account and were made payable DRG:


| Date | Amount | Check # | Payee |
|---|---|---|---|
| 02/26/07 | 5,000 | 1197 | DRG |
| 03/23/07 | 30,000 | 1213 | DRG |
| 04/02/07 | 40,000 | 1216 | DRG |
| 04/23/07 | 100,000 | 1220 | DRG |
| 05/08/07 | 125,000 | 1222 | DRG |
| 05/26/07 | 25,000 | 1225 | DRG |
| 06/04/07 | 27,000 | 1228 | DRG |

| | | | |
|---|---:|---|---|
| 06/27/07 | 55,000 | 1240 | DRG |
| 08/09/07 | 5,000 | 1247 | DRG |
| 08/27/07 | 7,500 | 1255 | DRG |
| 09/20/07 | 20,000 | 1263 | DRG |
| 09/27/07 | 5,000 | 1273 | DRG |
| 10/24/07 | 15,000 | 1283 | DRG |
| 11/08/07 | 10,000 | 1290 | DRG |
| 01/10/08 | 30,000 | 1301 | DRG |
| 03/07/08 | 20,000 | 1304 | DRG |
| 03/19/08 | 6,000 | 1306 | DRG |
| 04/02/08 | 10,000 | 1308 | DRG |
| 04/17/08 | 8,000 | 1310 | DRG |
| 04/28/08 | 25,000 | 1313 | DRG |
| 06/10/08 | 15,000 | 1329 | DRG |

146.    The Debtor has testified under oath that he made all of the transfers to DRG described in paragraph 145 above and that the Defendant transferred no personal funds whatsoever to DRG to either acquire an ownership interest or finance its operations as a lender.   A copy of the relevant testimony is attached hereto and made a part hereof as Exhibit B.

147.    The books and records and tax returned filed by DRG, copies of which are attached hereto as Group Exhibit M and made a part hereof, show that as of December 31, 2007,  JILL GRUBE ("Jill"), the daughter of the Debtor and the Defendant, owned 75% of DRG, and the Defendant owned 25% of DRG.

148.    The books and records and tax returned filed by DRG, copies of which are attached hereto as Group Exhibit N and made a part hereof, show that as of December 31, 2008, the Defendant owned 100% of DRG.

149.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit M and made a part hereof, show that as December 31, 2007 the Defendant was owed $259,738.00 by DRG.

150.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibit N and made a part hereof, show that as December 31, 2008 the loan of $259,738.00 made by the Defendant had been converted to a capital contribution and added to other transfers from the Debtor, all of which totalled $864,142.00.

151.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibits M and N and made a part hereof,  show that during the period from January 19, 2007 through December 31, 2008 show the Debtor had loaned no money to DRG.

152.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibits M and N and made a part hereof, show that during the period from January 19, 2007 through December 31, 2008 show the Debtor had no ownership interest in DRG.

153.    The books and records and tax returns filed by DRG, copies of which are attached hereto as Group Exhibits M and N and made a part hereof, show that during the period from January 19, 2007 through December 31, 2008 show the Debtor was not a creditor of DRG.

154.    The Debtor's estate was depleted as he received no benefit from the transfers to DRG described in paragraph 145 above.

155.    The Debtor made the transfers to DRG with actual intent to hinder, delay, or defraud any creditor of the Debtor as:

   a.      The transfers were made to an insider;

b.      The Debtor retained possession or control of the property transferred

after the transfers;

c.      The transfers were concealed and not disclosed by the Debtor;

d.      The transfers were of substantially all of the Debtor's assets;

e.      The Debtor removed or concealed assets;

f.      The Debtor received less than reasonably equivalent value for the

transfers made to DRG for the benefit of the Defendant;

g.      The Debtor was insolvent or became insolvent shortly after the

transfers were made; and

h.      The transfers occurred shortly before and after a substantial debt was

incurred.

156.    The Plaintiff may avoid the transfers to DRG pursuant to Section 544(b)(1) of the

Bankruptcy Code and 740 ILCS 160/5(a)(1).

157.    As a result of making the transfers described in paragraph 145, the Debtor conferred

a benefit on the Defendant as an insider, as the majority owner of DRG, and as a creditor of DRG.

158.    The Debtor intended to confer a benefit on the Defendant, an insider by making the

transfers described in paragraph 145 which were used by the Defendant to fund the operations of

DRG of which the Defendant was the majority owner and a primary lender.

159.    By making the transfers described in paragraph 145 the Debtor benefitted the

Defendant as her ownership interest in DRG increased.

32

160.    The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 145 is quantifiable as her ownership interest in DRG increased from 25% in 2007 to 100% in 2008.

161.    The benefit the Defendant received as a result of the transfers made by the Debtor described in paragraph 145 is quantifiable as she invested $864,142.00 in DRG without using any of her personal funds thereby preserving her personal net worth.

162.    The Defendant further benefitted from the transfers made by the Debtor described in paragraph 145 in that as a result of the increase of her ownership interest in DRG she received from DRG a capital loss of $240,678.00 in 2008 which offset a capital gain realized by the Debtor in the amount of $926,879.00 on their personal federal income tax return, a copy of which is attached hereto as Exhibit J and made a part hereof.

163.    Pursuant to 11 USC §550(a)(1), the Trustee may recover the value of the transfers from the Defendant for the benefit of the estate.

RELIEF SOUGHT:

a.    Entry of an order avoiding the transfer of the Debtor's funds to DRAGONFLY RESTAURANT GROUP, LLC in the amount of $583,500.00.

b.    Entry of an order granting judgment in favor of Plaintiff, A. CLAY COX, not individually, but as Trustee for the above bankruptcy estate and against Defendant, SUZANNE H. GRUBE, in the amount of $583,500.00, plus pre-judgment interest.

c.    Such other just and equitable relief.

33

DATED: August 14, 2012

A. CLAY COX, Chapter 7 Trustee

By      */s/ Robert Lindstrom*
His Attorney

## CERTIFICATE OF SERVICE

I certify that on August 14, 2012, a notice of electronic filing of this document was served upon anyone who has electronically entered their appearance in this case.

*/s/ Robert Lindstrom*

Robert Lindstrom, Attorney at Law
(ARDC No. 01668552)
Attorney for Chapter 7 Trustee
Suite 412 Bondi Building
311 East Main Street
Galesburg, IL 61401
Telephone: (309) 343-3000
Facsimile: (309) 343-3001
Email: bob@boblindstromlaw.com
Trustee-James Grube\grube.drg.2d amended complaint.wpd