**SIGNED THIS: January 29, 2013**

_____
**Thomas L. Perkins**
**United States Bankruptcy Judge**
_____

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES R. GRUBE, | ) | Case No.  09-81713 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| A. CLAY COX, not individually but as | ) | |
| Trustee for the above bankruptcy estate, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adv. No.  10-8055 |
| | ) | |
| SUZANNE H. GRUBE, | ) | |
| | ) | |
| Defendant. | ) | |

### O P I N I O N

This matter is before the Court on the motion filed by the Defendant, Suzanne H.

Grube (SUZANNE), to dismiss the Second Amended Complaint filed by the Plaintiff, A.

Clay Cox (TRUSTEE), as Trustee of the bankruptcy estate of the chapter 7 debtor, James R.

Grube (DEBTOR).

## BACKGROUND

The DEBTOR filed a Chapter 7 petition on June 2, 2009.  Richard E. Barber, the first Trustee of the DEBTOR'S bankruptcy estate, filed a complaint against SUZANNE on June 3, 2010, seeking to recover transfers made by the DEBTOR to Dragonfly Restaurant Group, LLC, doing business as "Jill's on Galena," for the benefit of SUZANNE, alleged to be its majority owner.  The complaint, stated in three counts, alleged that the transfers were constructively fraudulent and sought recovery of $463,000 transferred within two years of the filing under section 548(a)(1)(B) of the Bankruptcy Code, and of $1,236,000 transferred within four years, under the Illinois Uniform Fraudulent Transfer Act (Illinois UFTA) and section 544 and applicable  state law.

SUZANNE answered the original complaint, characterizing the alleged facts as "confusing and convoluted."  She set forth, in considerable detail, her interest in Dragonfly Restaurant Group, LLC, (DRG), the holding company for Cutter Lake, LLC and Hound Peoria, LLC, d/b/a Firkin & Hound.  She also set forth her status as sole shareholder of Dragonfly Enterprises, Inc. (INC), the owner of "Jill's on Galena," as of December 31, 2008. Based on Trustee Barber's misperception of DRG's identity, SUZANNE admitted that certain transfers had taken place, but otherwise denied the allegations as confusing, noting it was unclear whether the Trustee was alleging that the transfers had been made to DRG or to INC.  Noting that the DEBTOR had guaranteed INC's loans from Busey Bank, she also denied that the transfers had been made for her benefit.

Two other adversary proceedings were filed by Trustee Barber against SUZANNE. In Adversary No. 09-8111, he sought to recover transfers made by the DEBTOR from the

balance of the proceeds of the sale of his insurance agency, which he received in May, 2008, as constructively fraudulent transfers.[1]  The transfers sought to be avoided consisted of five separate transfers to SUZANNE totaling $225,000 and a payment of $335,497 to Busey Bank in payment of the full balance on a loan made to  Cutter Lake, LLC, allegedly made for the benefit of SUZANNE.  Adversary No. 10-8011, filed against SUZANNE and Associated Bank,  involved transfers of the DEBTOR'S ownership interest in two entities, KMA Builders, LLC and Queenwood, LLC, to SUZANNE.  Trustee Barber sought to avoid and recover each transfer based on actual fraud and, alternatively, for constructive fraud.[2]

An initial pretrial conference in this proceeding was scheduled along with the two related adversaries filed by Trustee Barber against SUZANNE.  The same attorney represented Trustee Barber in all three adversaries and continues to represent Trustee Cox as well.  The attorney advised the Court that he was focusing on one of the related proceedings and would be off work as a result of a medical problem.  Continued pretrial hearings were held in all three proceedings on February 15, 2011 and May 31, 2011.  Shortly before the last hearing, on May 18, 2011, Trustee Barber filed a motion for summary judgment in Adversary No. 09-8111.  On September 6, 2011, at a continued hearing, the Trustee's  attorney remained uncertain whether he would file a motion for summary judgment in this proceeding, again noting that the focus of his attention was on the other two proceedings.  A motion for summary judgment was filed in Adversary No. 10-8011 on

---

[1]The Trustee also sought turnover of the $225, 000, pursuant to section 542 of the Bankruptcy Code, alleging that the monies remained in SUZANNE'S stock account.

[2]The Trustee alleged that the DEBTOR transferred his interest in Queenwood, LLC on February 8, 2006, and that on October 21, 2009, Queenwood, LLC conveyed its primary asset, real estate in Morton, Illinois, to Associated Bank. Associated Bank, asserting that it was a good faith transferee of the property and that it held a valid and enforceable lien which was not avoidable, entered into a compromise with the Trustee and was dismissed from the proceeding.

September 29, 2011.    After the Court issued its ruling in Adversary No. 09-8111, in

October, 2011, granting the summary judgment in part, the case was set for trial on April

3, 2012.

A continued pretrial in this case was held on December 13, 2011, at which Trustee

Barber indicated he was in the process of preparing a motion for summary judgment. After

the new year, A. Clay Cox replaced Richard Barber as the Trustee.  Based in part on the

appointment of a new trustee and the impending trial, the DEBTOR and SUZANNE

requested a settlement conference in all three adversary proceedings.  The parties were

unable to reach an agreement and litigation resumed.  Cross-motions for summary

judgment were filed in Adversary No.  09-8111 and discovery resumed in Adversary No.

10-8011.[3]   At a pretrial conference in this case, the TRUSTEE indicated that he would be

filing an amended complaint.

The TRUSTEE filed a first amended complaint on June 5, 2012, three years and three

days after the filing of the petition and two years and two days after the filing of the

original complaint.  In the first amended complaint, the TRUSTEE separated the transfers

made to DRG from those made to INC.  The TRUSTEE sought to avoid transfers of

$1,078,244 made to INC within the four years preceding the filing of the petition, based

alternatively on actual and constructive fraud under the Illinois UFTA.[4]  The TRUSTEE also

sought to avoid transfers totaling $538,484 to DRG as constructively fraudulent based

---

[3]The Court issued its ruling on cross-motions for partial summary judgment filed in Adversary No. 09-8111 on August 9, 2012.  The motions concerned only the payment of the Cutter Lake loan.  The Court determined that the DEBTOR, having personally guaranteed the loan, received reasonably equivalent value in exchange for the payment.  Because the TRUSTEE sought only to recover the transfer as constructively fraudulent, his arguments regarding the DEBTOR'S intent to benefit SUZANNE by paying off the loan, were not relevant.  Only if the transfer had been avoided would the issue whether SUZANNE was the entity for whose benefit the transfer was made come into play.

[4]Count I sought to recover the transfers as fraudulent transfers under 740 ILCS 160/5(a)(2) and 11 U.S.C. § 544.  Count II sought to recover certain transfers as fraudulent  under 740 ILCS 160/5(a)(1) and section 544.

4

alternatively on bankruptcy law and on the Illinois UFTA and as actually fraudulent under state law.[5] SUZANNE moved to dismiss the amended complaint, pursuant to Bankruptcy Rule 7012(b) and for a more particular statement. SUZANNE contended that the amended complaint failed to state the allegations of fraud with particularity, noting that the transfers were lumped together. The Court agreed with SUZANNE, granting the motion and giving the TRUSTEE an opportunity to file a second amended complaint. In issuing its ruling, the Court told the TRUSTEE that it regarded the complaint as confusing and that it appeared that the claims for actual and constructive fraud were jumbled together. The Court advised the TRUSTEE that he needed to separate the two kinds of fraud claims and expand upon how SUZANNE benefitted from the transfers, whether it was in her role as an owner, creditor or as an insider.

The TRUSTEE filed a second amended complaint on August 14, 2012. For the first time, the TRUSTEE set forth the transfers made by the DEBTOR by date, amount and transferee. The counts of the second amended complaint may be summarized as follows.

| Count | Initial Transferee | Description of Claim | Amount |
|-------|-------------------|---------------------|--------|
| I | INC | Section 548: constructive fraud | $ 205,000 |
| II | INC | 740 ILCS 160/5(a)(2): constructive fraud | 657,660 |
| III | INC | 740 ILCS 160/5(a)(1): actual fraud | 657,660 |
| IV | DRG | Section 548: constructive fraud | 258,500 |
| V | DRG | 740 ILCS 160/5(a)(2): constructive fraud | 583,500 |
| VI | DRG | 740 ILCS 160/5(a)(1): actual fraud | 583,500 |

The TRUSTEE alleges that the DEBTOR had no ownership interest in either entity nor was he listed as a creditor of either entity. At their inception, both INC and DRG were owned by Jill Grube (Jill), the daughter of the DEBTOR and SUZANNE. According to the

---

[5]Count III sought to recover certain transfers as fraudulent under section 548(a)(1). Count IV sought recovery of certain transfers as fraudulent under 740 ILCS 160/5(a)(2). Count V sought recovery of certain transfers as fraudulent under 740 ILCS 160/5(a)(1).

allegations of the second amended complaint, SUZANNE first acquired an interest in INC

during 2005, owning 73.44% at the end of that year.  By the close of 2008, her interest had

increased to 80%, with Jill retaining ownership of the remaining interest.  SUZANNE had

acquired full ownership in INC by the end of 2009.  As to DRG, which was formed in

January, 2007, the TRUSTEE alleges that as of the end of that year, SUZANNE had

acquired a 25% interest.  DRG ceased doing business in December of the following year.

At the end of 2008, SUZANNE had acquired full ownership.[6]

The allegations of the first, second, fourth and fifth counts, based on constructive

fraud, mirror the allegations of the original complaint.[7]  In Counts III and VI, setting forth

claims for actual rather than constructive fraud, the TRUSTEE alleges that the DEBTOR

made the transfers with the intent to hinder, delay or defraud "any creditor," referencing

certain badges of fraud.  The TRUSTEE seeks to recover the avoided transfers from

SUZANNE, alleging that in her role as an insider, as the majority stockholder of INC and

the majority owner of DRG, and as a creditor of both entities, she benefitted from the

transfers.  According to the TRUSTEE'S allegations, the DEBTOR, in making the transfers

to INC and DRG, intended to benefit SUZANNE, the majority owner and primary lender,

by funding the operations of those entities.  The TRUSTEE relies on the books and records

of INC and DRG and on the tax returns filed by SUZANNE and those entities to quantify

the benefits received by SUZANNE.  The TRUSTEE'S theory is that the DEBTOR'S

transfers not only increased her ownership interest in DRG and INC, but were reflected on

---

[6]In her memorandum of law in support of her motion to dismiss, SUZANNE corrects the TRUSTEE'S allegations, stating that she acquired a 25% interest in DRG the day after it was formed.  She became the sole owner on December 31, 2008.  SUZANNE became an 80% shareholder of INC on May 1, 2005.  She acquired sole ownership on December 31, 2008.

[7]The amount of the transfers to be avoided is slightly different.  The parties do not make an issue of this difference and the Court disregards it as well.

the books as loans from SUZANNE, thereby preserving her personal net worth.

## ANALYSIS

In ruling on a motion to dismiss under Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the factual allegations of the complaint as true and draw all reasonable inferences in the plaintiff's favor.[8]  *Massey v. Wheeler*, 221 F.3d 1030 (7th Cir. 2000).  A motion to dismiss should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief.  *Wilson v. Price*, 624 F.3d 389 (7th Cir. 2010).  Conclusory allegations not supported by factual assertions are not to be taken as true.  *Mid-America Regional Bargaining Ass'n v. Will County Carpenters Dist. Council*, 675 F.2d 881 (7th Cir. 1982).  In order to survive a motion to dismiss, the well-pleaded factual allegations must state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930 (7th Cir. 2012).

Before the Court is SUZANNE'S motion to dismiss the second amended complaint on various grounds.  SUZANNE'S primary argument, as sorted out by the Court, is that the TRUSTEE'S claims for avoidance based on actual fraud in the second amended complaint are barred by the statute of limitations, because neither the first or the second amended complaints relate back to the original complaint. SUZANNE also maintains that the TRUSTEE'S failure to name INC or DRG as a defendant in the proceedings is a fatal defect. SUZANNE'S motion to dismiss is also based on Civil Rule 9(b), which requires the

---

[8]For ease of reference, when referring to a Federal Rule of Civil Procedure, the Court will use the identifier "Civil Rule." The identifier "Bankruptcy Rule" will be used when referring to a Federal Rule of Bankruptcy Procedure.  To avoid unnecessary clutter, the Court will omit the customary reference that the Civil Rule is incorporated into the Bankruptcy Rules, trusting that readers may source each rule discussed without assistance.

TRUSTEE to plead fraud with particularity. SUZANNE also contends that the allegations regarding the benefits which she received as a result of the transfers are lacking in the required specificity. Following a hearing on October 16, 2012, the Court took the motion to dismiss under advisement and directed the TRUSTEE to respond to the motion. In his response to the motion to dismiss, the TRUSTEE contends that the initial transferees are not necessary parties and that none of the claims asserted in the second amended complaint are barred by the statute of limitations. The TRUSTEE maintains that he has complied with the directions concerning specificity given by the Court in dismissing the first amended complaint.

**Necessary Parties**

As a threshold issue, SUZANNE argues that all counts of the second amended complaint must be dismissed because the TRUSTEE failed to timely bring an action against the initial transferees, INC and DRG, to avoid the transfers prior to seeking recovery from SUZANNE under section 550.[9] SUZANNE claims that the TRUSTEE conflates the avoidance and recovery provisions and ignores the distinction between an initial transferee and the entity for whose benefit the transfer was made. Because the TRUSTEE is not seeking to recover the transfer from her as a subsequent transferee, but rather as the entity for whose benefit the transfer was made (a "transfer beneficiary"), SUZANNE contends that the prefatory language of section 550(a)(1), that recovery may be had "to the extent that a transfer is avoided," requires that the transfer first be actually avoided in litigation against the initial transferee. SUZANNE relies on *In re Brooke Corp.*, 443 B.R. 847

---

[9]Although not referred to by SUZANNE, Civil Rule 19, incorporated by Federal Rule of Bankruptcy Procedure 7019, provides in pertinent part that a person must be joined as a party if "in that person's absence, the court cannot accord complete relief among existing parties." Since complete relief may be accorded among the TRUSTEE and SUZANNE, the initial transferees, INC and DRG, are not necessary parties under the Civil Rule.

(Bankr.D.Kan. 2010); *In re Trans-End Technology, Inc.,* 230 B.R. 101 (Bankr.N.D.Ohio 1998);

and *In re Slack-Horner Foundries Co.,* 971 F.2d 577 (10th Cir. 1992), in support of her position.

As pointed out by the TRUSTEE, this Court has endorsed the contrary position in

*In re Grube,* 2012 WL 3263905 (Bankr.C.D.Ill. 2012)(decided August 9, 2012, in Adversary

No. 09-8111), noting that a trustee may bring a single-defendant action against a

subsequent transferee or a beneficiary of the initial transfer, without naming the initial

transferee as a necessary party.  In addition to *In re Phillips,* 379 B.R. 765 (Bankr.N.D.Ill.

2007) and *In re M. Fabrikant & Sons, Inc.,* 394 B.R. 721 (Bankr.S.D.N.Y. 2008), cited by this

Court, a number of decisions advocate the view that the avoidability of a transfer may be

first established in an action against a downstream transferee or transfer beneficiary.  *In re*

*International Administrative Services, Inc.,* 408 F.3d 689 (11th Cir. 2005); *Securities Investor*

*Protection Corporation v. Bernard L. Madoff Inv. Securities LLC,* 480 B.R. 501, 520-22

(Bankr.S.D.N.Y. 2012); *In re AVI, Inc.,* 389 B.R. 721, 733-35 (9th Cir.BAP 2008); *In re Connolly*

*North America, LLC,* 340 B.R. 829 (Bankr.E.D.Mich. 2006); *In re Crafts Plus+, Inc.,* 220 B.R. 331

(Bankr.W.D. Tex. 1998); *In re Richmond Produce Co., Inc.,* 195 B.R. 455 (N.D.Cal. 1996).  Those

courts have rejected a literal construction of the qualifying phrase "to the extent that a

transfer is avoided" as mandating that the trustee must first successfully avoid the transfer

in a separate claim against the initial transferee.

In pertinent part, section 550 provides as follows:

(a) Except as otherwise provided in this section, to the extent that a transfer
is avoided under section 544, 545, 547, 548, 549, 553 (b), or 724 (a) of this title,
the trustee may recover, for the benefit of the estate, the property transferred,
or, if the court so orders, the value of such property, from—

(1) the initial transferee of such transfer or the entity for whose benefit
such transfer was made; or

(2) any immediate or mediate transferee of such initial transferee.
* * *
(d) The trustee is entitled to only a single satisfaction under subsection (a) of
this section.
* * *
(f) An action or proceeding under this section may not be commenced after
the earlier of —
(1) one year after the avoidance of the transfer on account of which
recovery under this section is sought; or
(2) the time the case is closed or dismissed.

The Code sections that create the avoiding powers define the elements of those

causes of action, but do not identify whom to sue.  It is section 550 that identifies the

potential defendants.  In order to bring an avoidance claim, the trustee must ordinarily

name as a defendant at least one of the persons or entities liable for recovery under section

550.[10]  Some of those may be deceased, defunct or insolvent.  It is the trustee's option whom

to sue for recovery.  *Levit v. Ingersoll Rand Fin. Corp. (In re V.N. Deprizio Constr. Co.)*, 874

F.2d 1186, 1194 (7th Cir. 1989).  Contrary to SUZANNE'S argument, the statute does not

prescribe any particular order in which the suits for recovery must be brought.  The initial

transferee and the transfer beneficiary stand as potentially liable parties on equal statutory

footing in the same subparagraph separated only by the conjunction "or."  11 U.S.C. § 550

(a)(1).  The plain and unambiguous meaning of this provision is that the trustee may sue

either one alone, may sue both together or may sue one after the other in either order,

subject to the single satisfaction rule in paragraph (d) and the extended limitations period

in paragraph (f).

Contrary to SUZANNE'S position, the qualifier "to the extent that a transfer is

---

[10]It is recognized that where lien avoidance is the desired remedy, rather than recovery of transferred property or its
value, the lienholder is the appropriate defendant.  *See, e.g., In re Burns,* 322 F.3d 421 (6th Cir. 2003).

avoided" has been interpreted by the Seventh Circuit to account for the circumstance where only part of a given transfer is avoided. *Id.* at 1196. SUZANNE'S theory that the qualifier somehow serves to require that a transfer must first be avoided as against the initial transferee before the trustee can sue a transfer beneficiary flies in the face of the Seventh Circuit's interpretation of the phrase.

SUZANNE relies on the well-recognized precept that avoidance and recovery are two necessary but separate parts of a liability determination for purposes of section 550(a). It is axiomatic that a trustee who seeks recovery under section 550 must first prove the elements of the underlying avoidance action, since if a transfer is not avoided, there is no recovery to be had. But the analytical separateness of avoidance and recovery does not equate to a procedural separation. Principles of preclusion suggest that avoidance and recovery claims be brought in the same action.

It is a basic premise of preclusion law that a court's judgment binds only the parties to a suit. *Taylor v. Sturgell,* 553 U.S. 880, 884, 128 S.Ct. 2161, 171 L.Ed2d 155 (2008). A person who is not a party is not bound since he has not had a full and fair opportunity to litigate the issue.[11] *Id.* at 892. So the idea that a trustee should avoid a transfer first in a separate action and then later sue for recovery in a different action, while seemingly plausible in theory, is flawed as a practical matter. With good reason, avoidance and recovery are almost always prosecuted together in a single action. Unless one of the relatively rare exceptions to the rule against nonparty preclusion applies, a trustee must plead and prove the avoidability of the transfer in each and every action to recover the

---

[11] The Supreme Court lists six categories of exceptions to the rule against precluding nonparties, none of which is necessarily or ordinarily applicable among the various potential defendants under section 550. 553 U.S. at 893-95.

property transferred or its value.  The avoidability of a transfer is determinable, not as an

absolute truth, but by the preponderance of the evidence presented in a particular

proceeding.[12]

This Court holds that a trustee is not required to separately avoid a transfer before

suing a transfer beneficiary.  Avoidance may be joined with recovery in a single adversary

proceeding.  It is permissible in such a proceeding for the trustee to sue downstream

transferees and/or transfer beneficiaries without joining the initial transferee.  The initial

transferee of an avoidable transfer is not a necessary party to an avoidance action that seeks

to establish recovery liability only against a transfer beneficiary or a subsequent transferee.

The Court determines that the TRUSTEE was not required to first bring a separate

avoidance action against INC and DRG or alternatively to name them in this proceeding.

**Waiver**

Without citation of authority, the TRUSTEE contends that SUZANNE, by failing to

raise the statute of limitation defense in her motion to dismiss the first amended complaint,

which included a claim based on actual fraud, waived her right to assert that argument

here.  The TRUSTEE'S contention is without merit.  Civil Rule 8 requires that the

affirmative defense of statute of limitations be raised in a responsive pleading.  As made

clear by Civil Rule 7, a "pleading" does not include a motion to dismiss.  *Perry v. Sullivan*,

207 F.3d 379 (7th Cir. 2000).  Even successive motions to dismiss do not result in waiver of

a statute of limitations defense.  *Perry; Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012).  In

---

[12]The slim possibility of inconsistent results, a negative outcome, is far outweighed by the benefit (as a constitutional necessity) of according each transferee and transfer beneficiary the opportunity to litigate and be heard on every element upon which his liability is premised.

*Ennenga,* after recognizing that a motion to dismiss on statute of limitations grounds

qualifies as a Civil Rule 12(b)(6) motion to dismiss for failure to state a claim, the Seventh

Circuit reasoned:

> Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being
> raised in a successive motion. Stated differently, Rule 12(h)(2) specifically
> excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation
> requirement. The policy behind Rule 12(g) is to prevent piecemeal litigation
> in which a defendant moves to dismiss on one ground, loses, then files a
> second motion on another ground. (Citation omitted). Rule 12(h)(1) enforces
> this consolidation requirement by adding a waiver rule: "A party waives any
> defense listed in Rule 12(b)(2)-(5) by . . . omitting it from a motion in the
> circumstances described in Rule 12(g)(2)" or by failing to preserve it "by
> motion under this rule" or "in a responsive pleading or in an amendment
> allowed by Rule 15(a)(1) as a matter of course." Fed. R. Civ. P. 12(h)(1). Note
> the limitation, however. The Rule 12(h)(1) waiver rule applies only to the
> defenses listed in Rule 12(b)(2)-(5) (lack of personal jurisdiction, improper
> venue, insufficient process, and insufficient service of process). Failure-to-
> state-a-claim defenses are thus excepted from the Rule 12(g)(2) consolidation
> requirement and not included in the Rule 12(g)(1) waiver rule.

SUZANNE, not having filed an answer to the first amended complaint, did not waive the

statute of limitations defense.

**Relation Back**

SUZANNE contends that the third and the sixth counts of the second amended

complaint, alleging claims for actual fraud, are barred by the two-year statute of

limitations. The TRUSTEE does not dispute that the first and second amended complaints

were filed after the expiration of the two-year statute of limitations for fraudulent

conveyance claims under section 546(a)(1). Nor does he dispute that the original complaint

did not assert a claim based on actual fraud. At issue is whether under Civil Rule 15(c),

which governs the relation back of amendments, the allegations of actual fraud set forth

in the second amended complaint relate back to the allegations of constructive fraud in the

original complaint, thus rescuing those claims from the time bar of section 546.

Civil Rule 15(c)(1)(B) provides that an amendment to a pleading relates back to the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  The claim need not be based on an identical substantive legal theory of recovery in order to relate back to the original complaint, as long as the new claim stems from the same core of facts.  *Bularz v. Prudential Ins. Co. of America*, 93 F.3d 372 (7th Cir. 1996).  The central inquiry determining whether an otherwise time-barred claim relates back is whether the prior pleading gave the defendant adequate notice of the conduct or occurrence which forms the basis for the amended claim. *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570 (7th Cir. 2006).  Civil Rule 15(c) embodies the principle that cases should be resolved on their merits rather than the technicalities of pleadings. *Staren v. American Nat. Bank & Trust Co. of Chicago*, 529 F.2d 1257, 1263 (7th Cir. 1976).

The parties dispute whether there is a sufficient factual nexus between the allegations of the original complaint and the new claims asserted in the second amended complaint.  The original complaint contained three counts which were based on constructive fraud and alleged that the DEBTOR transferred money to Dragonfly (1) without receiving reasonably equivalent value in exchange, (2) was insolvent or became insolvent as a result of the transfers, (3) was left with unreasonably small capital, or (4) intended or believed that he would incur debts beyond his ability to pay.  The transfers were not individually identified by date or amount.  Counts III and VI of the second

amended complaint allege that the DEBTOR made the transfers with the intent to defraud.

All that can be said upon comparison of those allegations is that the amended claims for actual fraud stem from the same transfers as the original claim. Though both are "fraud" claims, a claim based on actual fraud, which focuses upon the debtor's intent, bears little resemblance to a claim for constructive fraud, which depends upon the value received by the transferor and the effect of the transfer on his financial condition. The two types of fraud are categorically different. Neither party has cited a case involving relation back of one type of fraud claim to the other, nor has this Court's research disclosed one.

In this Court's view, a strong argument exists that an actual fraud claim should not be deemed to relate back to a claim for constructive fraud arising out of the same transfer. Other than the transfer itself, which defines damages, the elements of the claims are different. The transferor's intent to hinder, delay or defraud a creditor is the central element of a claim for actual fraud, but is immaterial to constructive fraud. The effect of the transfer upon the transferor's solvency is material to constructive fraud, but not actual fraud. In addition, the requirement of Civil Rule 9(b) that fraud be pleaded with particularity applies to actual fraud, but not constructive fraud. *In re Walter,* 462 B.R. 698 (Bankr.N.D. Iowa 2011); *In re Actrade Financial Technologies Ltd.,* 337 B.R. 791 (Bankr.S.D.N.Y. 2005). Permitting a trustee to assert time-barred claims for actual fraud, based on timely pleaded but more general allegations of constructive fraud, runs counter to the purpose of Civil Rule 9(b).

Moreover, the distinction between actual and constructive fraud is well-defined in section 548 of the Bankruptcy Code and in the Uniform Fraudulent Transfer Act. Trustees

and counsel for trustees readily recognize, when a fraudulent transfer avoidance complaint

is initially filed, the need to investigate and plead, or rule out, both kinds of fraud. Where

only one kind of fraud is pleaded, defendants rely on that choice when marshaling their

evidence. A complaint that pleads only constructive fraud and not actual fraud signals the

defendant that he may rest easy and not worry about gathering evidence that tends to

prove a nonfraudulent state of mind. If an actual fraud claim is then belatedly sprung

upon a defendant who has been lulled into a false sense of complacency, it is easy to

imagine how his efforts to defend against the new claim could be prejudiced by the passage

of time. If actual prejudice could be shown, leave to amend could be denied on that basis

alone. *See Airborne Beepers & Video, Inc. v. AT&T Mobility LLC,* 499 F.3d 663, 666-67 (7th Cir.

2007). SUZANNE alleges no actual prejudice here.

SUZANNE argues that she is entitled to rely on the limitations period set forth in

section 546 and should not be subjected to defending new claims added after the statute

of limitations has run. In principle, this Court agrees with that argument. The TRUSTEE

elected not to sue for actual fraud and had ample time to investigate whether a factual basis

for such a claim existed. He made actual fraud allegations against the DEBTOR in other

transfer avoidance proceedings and consciously chose not to do so in this proceeding.

Once the statute of limitations runs, he should be held to that decision.

These views are constrained, however, by the language of Civil Rule 15(c) which,

on its face, allows the amendment. Although the elements of the two claims and the

evidence needed to prove those elements are largely different, the claims arise out of the

same transfer – the same conduct, transaction or occurrence, which is the standard used

in Civil Rule 15(c)(1)(B). The Court reluctantly determines that the actual fraud claims

must be deemed to relate back to the timely pleaded constructive fraud claims for purposes

of Civil Rule 15(c), as arising out of the same conduct, transaction or occurrence.

**Misnomer**

SUZANNE also contends that the first three counts of the second amended

complaint, seeking avoidance of the transfers made to INC, are barred by the statute of

limitations, based on the TRUSTEE'S failure to name INC in the original complaint.  The

original complaint, naming "Dragonfly Restaurant Group, LLC, doing business as 'Jill's on

Galena,'" was a misnomer.  As clarified by SUZANNE in her answer to the original

complaint, Dragonfly Restaurant Group, LLC, referred herein as DRG, did not operate

"Jill's on Galena," but that restaurant was operated by Dragonfly Enterprises, Inc., referred

herein as INC.  SUZANNE argues that the TRUSTEE'S delay in correctly identifying INC

and DRG as the transferees was too great and that his procrastination should not be

countenanced by the Court.  Contrary to the TRUSTEE'S representation in his response to

the motion to dismiss, there is nothing in the record which supports his assertion that he

and SUZANNE agreed to let this adversary pend.  SUZANNE categorically denies such

an agreement.  SUZANNE, as sole shareholder of both entities, clearly had notice of the

action on INC's behalf, and based on the amount of the transfers alleged, must have known

that the TRUSTEE was seeking to recover transfers which the Debtor had made to both

entities.  Notwithstanding the lapse of time here, given the selfsame "identity of interest,"

there can be no prejudice to SUZANNE.[13]  In so ruling, the Court notes that there is no

---

[13]This Court's determination that the TRUSTEE was not required to name INC and DRG as defendants, removes the
analysis of the additional claims against INC in the second amended complaint from the provisions of Civil Rule
15(c)(1)(C), which governs the relation back of an amendment changing a party or the naming of a party against whom
a claim is asserted.  Although that provision is not technically applicable, the relevant requirements are essentially
satisfied.   SUZANNE knew early on that the TRUSTEE was mistaken as to the separate identities of INC and DRG.

evidence of bad faith on the part of the TRUSTEE.

**Failure to Plead Fraud with Particularity: Counts III and VI**

SUZANNE contends that Counts III and IV of the second amended complaint, alleging actual fraud pursuant to the Illinois UFTA, still fail to comply with Civil Rule 9(b) which requires that the circumstances constituting fraud be stated with particularity. Under the Rule, malice, intent, knowledge and other conditions of the mind of a person may be averred generally. In construing allegations of actual fraud in an action brought by a bankruptcy trustee, the "particularity" standard of Civil Rule 9(b) is somewhat relaxed. *In re DBSI, Inc.*, 477 B.R. 504 (Bankr.D.Del. 2012). A fair reading of the provision indicates that the mere allegation that a debtor made a transfer with the intent to hinder, delay or defraud a creditor is sufficient, without more, to adequately plead a fraudulent state of mind for an actual fraud claim.

Some courts state that a plaintiff can sufficiently plead fraudulent intent by allegations of facts which support certain "badges of fraud." *In re Lancelot Investors Fund, LP*, 451 B.R. 833 (Bankr.N.D.Ill. 2011); *In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289 (D.Del. 2012); *In re Image Masters, Inc.*, 421 B.R. 164 (Bankr.E.D.Pa. 2009). Such "badges of fraud" include a lack or inadequacy of consideration, a close relationship between the transferor and the transferee, and the retention of possession, benefit, or use of the property in question by the debtor. The TRUSTEE has alleged facts in support of several badges of fraud. Moreover, the second amended complaint sufficiently identifies the transfers made by the DEBTOR by date and amount. Accordingly, Counts III and IV of the second

amended complaint comply with the requirements of Civil Rule 9(b) and will not be dismissed on this basis.

### Failure to State a Claim for Recovery Against SUZANNE

SUZANNE seeks to dismiss all counts of the second amended complaint on the basis that the TRUSTEE fails to adequately plead that she is the entity for whose benefit the transfers were made. From the second amended complaint, SUZANNE distills two benefits which the TRUSTEE alleges were conferred upon her by the DEBTOR'S transfers to INC and DRG: increase in her equity interest in those entities and certain tax benefits, which were later claimed on a joint tax return filed with the DEBTOR. As to the first, SUZANNE asserts that, at all times relevant, both entities were insolvent and that the transfers made by the DEBTOR were not substantial enough to give her positive equity in either entity. With respect to the second, SUZANNE maintains that the tax benefit inured to the DEBTOR, not to her. In response, the TRUSTEE notes that the transfers from the DEBTOR to INC and DRG were reflected on the books and records as loans made by SUZANNE, suggesting that no further benefit to her need be shown.

Against a relatively blank backdrop, the Seventh Circuit in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 895 (7th Cir. 1988), examined section 550(a)(1) and then posed the following questions which it regarded as raised by that provision:

> To what extent does "intent" matter under Section 550(a)(1)? If intent matters, whose? To what extent must courts find the true economic benefits of a transaction?

The court, however, did not answer those questions. Addressing those unanswered questions, the court in *In re McCook Metals, L.L.C.*, 319 B.R. 570 (Bankr.N.D.Ill. 2005),

interpreted *Bonded* as identifying the following elements, in addition to the debtor's intent to confer a benefit, to establish the liability of a transferee for whose benefit the transfer was made: (1) whether the benefit was actually received by the beneficiary; (2) whether the benefit was quantifiable; and (3) whether the benefit was accessible by the beneficiary. *Accord, In re Cahillane*, 408 B.R. 175 (Bankr.N.D.Ind. 2009).

In establishing a prima facie case under section 550(a)(1), the intent of the debtor to benefit one other than the transferee is not necessarily a fraudulent intent. Thus, it is not the particularity requirement of Civil Rule 9 which applies, but rather the "notice" pleading standard under Civil Rule 8(a), which mandates only a short and plain statement showing an entitlement to relief. The complaint contains plausible allegations, which if proved, could establish that SUZANNE was the transfer beneficiary within the meaning of section 550(a)(1). That is all that is required at this stage. *Richards v. Mitcheff*, 696 F.3d 635 (7th Cir. 2012). Dismissal of the second amended complaint on this ground is not warranted.

**Filing an Inconsistent Proof of Claim**

In a final attempt to defeat the second amended complaint in its entirety, SUZANNE contends that the TRUSTEE, by filing a proof of claim in the chapter 7 bankruptcy proceeding filed by Jill, for the monies transferred by the DEBTOR to DRG and INC, has admitted that the liability for transfers belongs solely to Jill. SUZANNE'S position is spurious. Jill's petition was filed on January 29, 2010. A claims bar date was set for July 24, 2010. The TRUSTEE filed a claim on May 6, 2010, for $1,636,657, which included the transfers by the DEBTOR, which he seeks to recover from SUZANNE in this proceeding. Jill's trustee failed to recover any assets, however, and the case was closed in August, 2010.

The TRUSTEE gained no advantage by filing that claim.[14]  That claim, seeking recovery for

transfers made to DRG and INC is not inconsistent with seeking recovery from SUZANNE.

 Section 550 permits recovery from an initial transferee, the entity for whose benefit such

transfer was made, or any downstream transferee, provided that recovery is otherwise not

precluded.  While the TRUSTEE is only entitled to a single recovery, he is entitled to target

any transferee within the statutory scheme.

    In conclusion, SUZANNE'S motion to dismiss will be denied and she will be given

twenty-one days to answer the second amended complaint.

    This Opinion constitutes this Court's findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 7052.  A separate Order will be

entered.

###

---

[14]  Judicial estoppel has no application here and the TRUSTEE makes no claim that it does.